UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES ARLOTTA,

                Plaintiff,

v.                                           Case # 18-CV-457-FPG

MCKESSON CORPORATION, et al.,

                Defendants.
_____

JAMES ARLOTTA,

                Plaintiff,

v.                                           Case # 18-CV-879-FPG

NIAGARA FRONTIER METRO SYSTEM INC., et al.,

                Defendants.
_____

JAMES ARLOTTA,

                Plaintiff,

v.                                           Case # 18-CV-1034-FPG

DAVE HERATY, et al.,

                Defendants.
_____

DECISION & ORDER

    *Pro se* Plaintiff James Arlotta, a frequent litigant in this District, filed three separate lawsuits and seeks permission to proceed *in forma pauperis* in each one. *See Arlotta v. McKesson Corp., et al.*, No. 18-CV-457-FPG, ECF Nos. 1-2 (W.D.N.Y. filed Apr. 16, 2018); *Arlotta v. Niagara Frontier Metro Sys., Inc., et al.*, No. 18-cv-879-FPG, ECF Nos. 1-2 (W.D.N.Y. filed Aug. 8, 2018); *Arlotta v. Heraty, et. al.*, No. 18-cv-1034-FPG, ECF No. 1-2 (W.D.N.Y. filed Sept. 20,

2018). Plaintiff also moved to recuse the Court pursuant to 28 U.S.C. § 455 in two out of the three cases and asks the Court to appoint him counsel. *See McKesson Corp.*, No. 18-CV-457-FPG, ECF Nos. 3-4; *Niagara Frontier Metro Sys.*, No. 18-cv-879-FPG, ECF Nos. 3-5; *Heraty*, No. 18-cv-1034-FPG, ECF No. 3. The Court finds that Plaintiff meets the statutory requirements to proceed as a poor person pursuant to 28 U.S.C. § 1915(a), and therefore his *in forma pauperis* motions are granted. The Court also screened Plaintiff's three complaints with respect to the 28 U.S.C. §1915(e) criteria and discusses each case in turn below.

**DISCUSSION**

**I.     Recusal**

Before addressing the substance of Plaintiff's three complaints, the Court turns to Plaintiff's requests for the Court to recuse itself under 28 U.S.C. § 455. Section 455 provides in relevant part: "Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," such as "[w]here he has a personal bias or prejudice concerning a party...." 28 U.S.C. §§ 455(a), 455(b)(1). However, "the judge is presumed to be impartial and a substantial burden is imposed on the affiant to prove otherwise." *Farkas v. Ellis*, 768 F. Supp. 476, 478 (S.D.N.Y.1991). The party seeking recusal must demonstrate that "a reasonable person, knowing and understanding all relevant facts, would recuse the judge." *Person v. Gen. Motors Corp.*, 730 F. Supp. 516, 518 (W.D.N.Y. 1990).

One of Plaintiff's reasons for requesting recusal is that the Court has ruled against Plaintiff in previous cases. *See, e.g.*, *McKesson*, No. 18-cv-00457-FPG, ECF No. 4. This Court has indeed ruled against Plaintiff in previous decisions, but it is well-settled that "adverse judicial rulings do not constitute a valid basis for recusal." *Hoffman v. Hoffman & Pollok*, No. 00 Civ. 3151 (RWS),

2002 WL 31444994, at *2 (S.D.N.Y. Oct. 31, 2002) (citing *Liteky v. U.S.*, 510 U.S. 540, 555 (1994)).

Plaintiff's remaining grounds for recusal abjectly fail to meet Section 455's standard of reasonableness. They include that the Court is "BIASED TOWARDS ROMAN CATHOLIC CHURCH AND DIOCESE OF BUFFALO AND ROME," is not "IMPARTIAL TOWARDS REPUBLICANS," took part in a "robing ceremony of himself" that was "a vestige of monarchs and royalty," and that, somehow, because Plaintiff's last name and the Court's "ENDS ACCORDING TO THE GRAMMATICAL RULES OF ROMANCE AND ENGLISH LANGUAGES," the Court is biased against Plaintiff. *Niagara Frontier Metro Sys., Inc.*, No. 18-cv-879, ECF No. 3 at 1-2; ECF No. 5 at 2 (emphasis in original). The unreasonable nature of these outlandish allegations is self-evident and vitiates the need for further analysis of this issue. Plaintiff's motions for recusal are DENIED.

## II. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). Pursuant to Section 1915(e), the Court must dismiss a complaint in a civil action if the Court determines at any time that the action (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C.A. § 1915(e)(2)(B)(i)-(iii). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, leave to amend pleadings is properly denied where amendment would

be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

### III. *Arlotta v. McKesson Corp.*, *et. al*

Plaintiff's Complaint in *McKesson*, which he filed on April 16, 2018, is difficult to follow, but the Court construes it as an attempt to allege a claim under the Fair Debt Collection Practices Act (FDCPA) against pharmaceutical distribution company McKesson Corporation, the medical group Preferred Physician Care PC (PPC), Independent Health Plan (IHA), and Rite Aid Pharmacy. *McKesson Corp.*, No. 18-CV-457-FPG, ECF No. 1. The crux of Plaintiff's Complaint is that Defendants improperly billed him for a tetanus vaccination that he asserts Medicare Part B should have covered. *Id.* at 7-8. On October 31, 2017, a representative from PPC informed Plaintiff that he owed $60.41 for the vaccination. *Id.* at 15. PPC sent a follow-up letter on November 9, 2017. *Id.* at 24.

The FDCPA prohibits debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir.1998) (quoting 15 U.S.C. § 1692e). PPC's actions cannot form the basis of an FDCPA suit because, as a creditor, it is "not subject to the FDCPA." *Maguire v. Citicorp Retail Servs.*, 147 F.3d 232, 235 (2d Cir. 1998). As for defendants IHA and Rite Aid, Plaintiff points to no conduct that would implicate them under the statute. Consequently, the Complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii). The Court declines to permit Plaintiff to amend his Complaint, as such repleading would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.

1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

IV.     *Arlotta v. Niagara Frontier Metro Sys. Inc., et. al.*

Plaintiff filed his second suit on August 8, 2018 against the Niagara Frontier Transportation Authority (NFTA),[1] NFTA lawyer Wayne Gradyl, New York State Division of Human Rights Commissioner Helen Diane Foster, and Governor Andrew Cuomo. *Niagara Frontier Metro Sys. Inc.*, No. 18-cv-879-FPG, ECF No. 1. The Complaint raises discrimination claims under the Rehabilitation Act, 29 U.S.C. § 794(a), and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.

The facts underlying Plaintiff's second suit are as follows: Plaintiff "suffer(s) from occasional bouts of insomnia" and slept through his morning bus route, so he had to walk more than five miles to catch the next bus. *Id.* at 5. He alleges that "[b]y not having more bus service, that the taxpayers pay for," the NFTA is discriminating against those living in Orchard Park, while "illegal narcotics (drug dealers) in the city have a bus stop every block and a half." *Id.* at 5. Plaintiff asks that the NFTA provide more bus service and "compensate me for the inconvenience and rudeness, and horrible customer service." *Id.*

On October 10, 2017, Plaintiff filed a verified complaint with the New York State Division of Human Rights (NYSDHR) based on the above allegations, complaining that the NFTA "reverse discriminate(s) against indigent, impoverished, white people without motor vehicles that live in the outlying suburbs and rural areas," that it does not make "any sense" that buses in the city "run more frequently," that "all residents of rural areas are being discriminated against," and that NFTA management are "known members of the international brotherhood of teamsters." *Id.* at 9-10.

---

[1] Plaintiff named "Niagara Frontier Metro System Inc." as a defendant, but the Court assumes Plaintiff intended to list the NFTA.

5

The NYSDHR determined that there was no probable cause to support Plaintiff's complaint and that the record instead showed that the NFTA "offers bus service in accordance with the likely ridership in a particular area, thus higher populated areas will see more frequent bus service." *Id.* at 12. Additionally, it found no evidence to indicate that Plaintiff "requested or was denied a disability accommodation." *Id.*

An NYSDHR finding of "no probable cause" could be preclusive under the doctrine of *res judicata* in other instances, but the doctrine does not apply to Plaintiff because, as a *pro se* litigant, Plaintiff did not have a "full and fair opportunity" to litigate his discrimination claim before the NYSDHR. *See James v. Am. Airlines*, 247 F. Supp. 3d 297, 302 (E.D.N.Y. 2017). In any event, however, Plaintiff's Complaint fails to state a claim.

To plead a claim under 42 U.S.C. § 2000a, Plaintiff must allege intentional discrimination depriving him of "the equal enjoyment of the goods, services, facilities, privileges, advantages, [or] accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a). Title II defines a "place of public accommodation" by setting forth a list of "establishments" that constitute "places of public accommodation" within the meaning of the statute, including "any inn, hotel, motel, ... restaurant, cafeteria, lunchroom, ... motion picture house, theater, concert hall," and similar establishments. 42 U.S.C. § 2000a(b). Buses and other forms of transportation are not among the public accommodations listed in § 2000a, so Plaintiff's Title II claim must be dismissed on this basis alone. *See James*, 247 F. Supp. 3d at 305; *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 139 (D.D.C. 2005).

Even assuming a bus were a place of public accommodation, Plaintiff fails to state a claim under § 2000a. Courts in the Second Circuit analyze claims under § 2000a using the framework for claims brought under 42 U.S.C. § 1981, which, "in turn, are analyzed under the burden-shifting

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)." *Jalal v. Lucille Roberts Health Clubs Inc.*, 254 F. Supp. 3d 602, 606 (S.D.N.Y. 2017). Under *McDonnell Douglas*, a complaint states a claim if it gives "plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Plaintiff's Complaint and the documents attached to it fail to allege facts plausibly supporting a minimal inference of discriminatory motivation. It is abundantly clear from the face of Plaintiff's Complaint, materials attached to it, and basic logic that bus service is based on projected demand and not some desire to favor city drug dealers over Caucasians living in remote areas. Any notion to the contrary is entirely improbable, and Plaintiff's suggestion that, as taxpayers, Orchard Park residents are entitled to the same frequency of bus service that city residents enjoy is not a viable claim under any federal discrimination law.

Plaintiff's Rehabilitation Act claim similarly fails. The Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). To make out a Rehabilitation Act claim, Plaintiff must allege that he is: (1) a qualified individual with a disability; (2) that the defendant is subject to the Rehabilitation Act; and (3) that he was denied the opportunity to participate in or benefit from Defendant's services, programs, or activities, or was otherwise discriminated against by Defendant by reason of his disability. *Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015).

To establish the first element—that he is a qualified individual with a disability—Plaintiff must: (1) show that he suffers from a physical or mental impairment; (2) identify an activity

claimed to be impaired and establish that it constitutes a major life activity; and (3) show that his impairment substantially limits the major life activity. *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d. 378, 391 (E.D.N.Y. 2016). In materials attached to his Complaint, Plaintiff alleges that he suffers from "M.D.D., and G.A.D.," *see Niagara Frontier Metro Sys.*, No. 18-cv-879-FPG, ECF No. 1 at 14, which the Court presumes stands for Major Depressive Disorder and Generalized Anxiety Disorder. These conditions constitute mental impairments under the Rehabilitation Act. *Kelly*, 200 F. Supp. 3d at 391. However, Plaintiff has not alleged what major life activity has been substantially limited, so he has not plausibly alleged the first element of his *prima facie* Rehabilitation Act case.

Moreover, Plaintiff has not alleged that he was discriminated against because of his depression or anxiety. As discussed above, Plaintiff's Complaint admits his belief that he was discriminated against as a taxpaying resident of Orchard Park and not because of his depression or anxiety. The Complaint is accordingly dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii). The Court declines to permit Plaintiff to amend his Complaint, as such repleading would be futile. *See Ruffolo*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

**V.** *Arlotta v. Heraty, et al.*

Plaintiff filed his third suit on September 20, 2018 against Erie County District Attorney Dave Heraty, New York State Attorney General Barbara Underwood, and a Diocese of Buffalo New York receptionist named "Kimberly." *Arlotta v. Heraty et al.*, No. 18-cv-457, ECF No. 1. Even construed liberally, Plaintiff's Complaint fails to state a claim upon which relief may be granted. Without listing any specific dates or contextual details, the Complaint states that in

September 2018, "District Attorney Dave Heraty displayed absolutely unprofessional behavior by a public servant by acting like a drill sergeant almost touching nose to nose screaming loudly in my face telling me to shut up." *Id.* at 4. After Plaintiff left the New York District Attorney's office in Buffalo, "2 men armed with hand guns and unidentifiable gold badges told [him] to stop" and told him he was "being detained," and he was "threatened with physical force if he did not comply . . . by law [he] did not have to honor their requests!" *Id.* Plaintiff then invokes Section 1983. *Id.*

Finally, Plaintiff asks for "preliminary injunctions against the state of New York," demands compensation due to "Dave Heraty's involvement in SCOTUS Docket # 17-9078," asks that the "Diocese of Buffalo's discriminatory practices end," and requests compensation "for damages due to excessive emotional pain and suffering. From this incident, and the false reporting, libel, slander, and defamation." *Id.* at 5. The latter part of Plaintiff's Complaint seems to be referring to a case that this Court dismissed with prejudice on September 18, 2017. *Arlotta v. Diocese of Buffalo, et al.*, No. 16-cv-631-FPG, 2017 WL 4124990, at *3 (W.D.N.Y. Sept. 18, 2017). The Court will not entertain any effort to relitigate that decision.

As for Plaintiff's claims that he was threatened with detention, perhaps under an exceedingly liberal pleading standard, those allegations could be construed as a false imprisonment claim. Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Mitchell v. Home*, 377 F. Supp. 3d 361, 371 (S.D.N.Y. 2005). However, Plaintiff has not alleged that he was actually confined or attributed the threats of detention to any of the named Defendants. Even though Plaintiff states that the events underlying this suit occurred earlier this month, he seems to conflate them with the underlying events of *Arlotta v. Diocese of Buffalo, et al.*, which

occurred in the early 2000s. As a result, the sum of Plaintiff's Complaint is incomprehensible. The Complaint is accordingly dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii). The Court declines to permit Plaintiff to amend his Complaint, as such repleading would be futile. *See Ruffolo*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

## V.     Motions for Counsel

The Court's dismissal of *Niagara Frontier Metro Sys.* and *Heraty* renders Plaintiff's motions to appoint counsel in those cases moot. Accordingly, they are denied.

## VI.    Order to Show Cause

The Court has now dismissed six of Plaintiff's lawsuits, and the Second Circuit has denied all of Plaintiff's appeals as "lack[ing] an arguable basis either in law or in fact." *Arlotta v. Cook Moving Sys., Inc. et al.*, No. 17-cv-00624-FPG, ECF No. 13 (W.D.N.Y. June 1, 2018); *Arlotta v. Diocese of Buffalo, et al.*, No. 16-cv-792-FPG, ECF No. 29 (W.D.N.Y. Mar. 20, 2018); *Arlotta v. Bank of Am.*, *et al.*, No. 16-cv-792-FPG, ECF No. 10 (W.D.N.Y. Mar. 30, 2018). Based on Plaintiff's history of commencing duplicative lawsuits and filing frivolous motions, as detailed above, and having considered the appropriate factors, the Court is prepared to issue an anti-filing injunction preventing him from commencing additional actions or filing additional papers in this Court without prior approval. However, before issuing such an injunction, Plaintiff will be given an opportunity to be heard as to why the Court should not take such action.

Pursuant to the All Writs Act, 28 U.S.C. § 1651, the Court is authorized to issue an injunction limiting vexatious litigation. *See In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient

administration of justice from [a vexatious litigant's] litigious propensities"). "[T]he traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *Id.* Instead, before issuing an anti-filing injunction, the Court must consider the following factors: (1) the litigant's history of litigation (in particular, whether it includes vexatious, harassing, or duplicative lawsuits); (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005). In this Circuit, there is an "unequivocal rule . . . that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998).

Accordingly, Plaintiff is hereby ordered to show cause in writing within 30 days of entry of this Decision and Order why he should not be enjoined from making further filings without prior Court approval. Plaintiff is advised that the failure to file a written response on or before this deadline may result in the imposition of sanctions against him. The Court further advises Plaintiff that he has the right to retain counsel to assist him in replying to the Court's Order to Show Cause if he wishes to do so.

## CONCLUSION

For the foregoing reasons, Plaintiff's three motions to proceed *in forma pauperis* are GRANTED, and the Complaints in all three cases (*Heraty*, ECF No. 1; *Niagara Frontier Metro Sys.*, ECF No.1; *McKesson*, ECF No. 1) are DISMISSED WITH PREJUDICE. Plaintiff's motions

11

for recusal (*McKesson*, ECF Nos. 3-4; *Niagara Frontier Metro Sys.*, ECF Nos. 3, 5) are DENIED, and Plaintiff's motions to appoint counsel (*Niagara Frontier Metro Sys.*, ECF No. 4; *Heraty*, ECF No. 3) are DENIED AS MOOT. Finally, Plaintiff must show cause as to why he should not be enjoined from making further filings without prior Court approval by October 29, 2018.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Plaintiff should direct requests to proceed on appeal as a poor person to the United States Court of Appeals for the Second Circuit on motion in accordance with Federal Rule of Appellate Procedure 24.

The Clerk of Court shall close all three cases.

IT IS SO ORDERED.

Dated: September 28, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court